Booth, J.,
delivered the opinion of the court:
The petition in this case was filed November 22, 1905. Depositions of the various witnesses on each side were taken in California, commencing on July 7, 1906, and fully concluded before the expiration of the month. The claimant filed his brief on September 12, 1910, the defendants theirs on May 5,1911, and claimant his reply brief on December 13, 1911. The case was brought to its first hearing before a full bench on December 14, 1911, resulting in a judgment for the claimant of $68,720.23, rendered on February 12, 1913, in a written opinion of the court. On March 11,1912, defendants filed a motion to amend findings and for a new trial. On April 3,1912, the claimant filed a cross motion to amend findings and for a new trial. On April 16, 1912, after leave granted claimant to amend his petition, the court heard oral arguments upon the foregoing motions. On May 27, 1912, the court allowed both motions to amend findings, granted a new trial, set aside the former judgment, and entered a new judgment in favor of claimant for $87,646.22, from which judgment defendants, on July 12, 1912, prayed on appeal to the Supreme Court. On October 17,1912, the claimant again filed a motion to amend findings, to which defendants objected in brief filed on November 11, 1912, and upon which the court again heard oral argument on December 12, 1912.
What was supposed by the court as its final order and disposition of the case was entered of record on January 6, 1913, wherein the court allowed in part and overruled in part the foregoing motion, allowing its former judgment and opinion to stand. On February 28, 1913, defendants withdrew their application for an appeal, and subsequently the judgment was fully appropriated for by the Congress. On March 21,1913, before any payment had been made to claimant by the Treasury Department, the defendants appeared and again filed a motion for a new trial, to which the claimant filed his objections, all of which the court, out of an abundance of caution, again heard on March 27, 1913, it being this last motion and the issue there raised which evokes this opinion.
The history of the case, aside from the merits of the present controversy, would seem to indicate a most patient and *378 careful consideration of the subject matter in litigation, even to the extent of proceedings which in an ordinary lawsuit would be considered extraordinary. On four different occasions the court granted oral arguments to counsel, in each of which the particular points of disagreement were forcibly and ably presented. The Court of Claims is a trial court; juries being excluded, the additional burden of finding the facts is cast upon it in each case.
Fully conscious of the importance of its findings to both the claimant and the Government, the court has in some instances assented to hear more than one argument on motions for new trials or to amend findings, where the briefs of the complaining parties, after review in chambers, have been sufficient to raise a reasonable doubt as to the accuracy of the court’s findings. This course has been adopted only in cases involving large amounts and involved and complicated records. To countenance the practice otherwise would tend to delay, a circumstance much to be avoided. What has been said has no application to motions of the defendants filed under section 1088, Eevised Statutes. That is a statutory privilege predicated on different considerations and enacted for a much different purpose than ordinary motions to amend findings and for new trials, but even in cases where section 1088, Eevised Statutes, has been resorted to in preferring motions for new trials upon the part of the defendants, it is not in strict accord with rapid advancement of judicial proceedings to delay filing such a motion to a time subsequent to a disposition of a similar motion filed in the ordinary way under the rules of the court, unless it affirmatively appear that some additional errors of importance have been discovered since the disposition of an ordinary motion of identical intent.
It is not always difficult after the findings and opinion of the court in a given case have been announced for the interested parties to immediately discover wherein they might have by additional or new evidence brought about a different-result. Not infrequently the judgment of the court itself suggests inadvertent omissions, which in the mass of details usually involved in complicated cases is overlooked. It is no reflection upon counsel that this occurs; it always has hap *379 pened and it always will; but nevertheless litigation can not be prolonged and cases permitted to extend over a long period of years by innumerable motions designed to correct these errors, unless it is apparent to the point of certainty that the correction would bring about a different result. The proposal to furnish new and additional testimony, which upon the face of the motion introduces a new controversy equally disputable with the issue first presented, serves no useful purpose and furnishes instances for criticism of the courts predicated upon alleged interminable delays. It is an absolute impossibility to always reach a conclusion in controversies involving disputed questions of law and fact, so as to effectually exclude a belated idea that certain testimony, not in the record, but available at all times, might not change the result. A somewhat extensive, at least an alarming opinion prevails, that litigation is made practically prohibitive by delays and expense incident thereto. It is of course impossible to eradicate entirely either feature in involved contentions before the courts, but much can be done, however, in allaying present fears without doing violence to justice, by terminating controversies fully and completely presented upon records which present the entire dispute, without indulging as a matter of right motions which must of necessity require in extenso a retrial of the case. If this be not done litigation is endless. These motions are always made in entire good faith and exhibit a degree of vigilance and interest upon the part of counsel always commendable, but they are the outgrowth of practice heretofore prevailing in the court which must of necessity be greatly modified.
The motion in this case is predicated upon two alleged errors of fact. First, that the court erroneously determined the catamaran or measuring device to be the “ determining mechanism in measuring depths.” .Second, that the datum plane adopted for ascertaining the depth of the excavations, although expressly stated in the contract as mean low tide, meant, according to trade usage, the mean of the lower low tide. The contention is properly supported by affidavits and doubtless would result in- positive testimony in accord therewith. Postponing for a moment a discussion upon *380 tbe merits of the newly discovered testimony and reverting to the opinion and judgment of the court as it now stands, we can, we believe, conclusively demonstrate the soundness of the court’s position, including, in some respects, in our consideration the alleged new matter in the present motion.
The undisputed findings in the case (47 C. Cls. R., 537) shows that the claimant received for his contract work a total compensation of $253,499.47. (Findings xm and xiv.) The court fixed the price per cubic yard for the additional excavation required of the contractor over and above the amount of the contract at $10.50 per cubic yard, a price concededly reasonable and which has not been attacked. Thus it is apparent that at this figure the contractor must have excavated under his contract 24,142.80 cubic yards of rock, which is not far below the estimate of the Government engineers. The affidavit of H. L. Demeritt, engineer in charge of measurements, expressly states “that from his own observations and measurements he knows that fully ten thousand six hundred (10,600) cubic yards of rock were excavated below the grade plane of the contract.”
Now, by a simple method of division it is conclusively demonstrated that the extra excavation required of the contractor amounted to 43.9 per cent of the entire contract work. Conceding, as the judgment of the court does, “ a sequential average slightly below the requirements of the contract would be disallowed,” and which in this case the court fixed at more than 25 per cent, to wit, 2,587.82 cubic yards, of the admitted excess, we find our conclusion predicated at last upon a most reasonable basis of the entire excess excavation. Without positive proof upon the subject of necessary extra excavation, always a part of work of this character, it is difficult to put limitations upon its extent. To hold, however, that a contractor would necessarily be compelled to do nearly 50 per cent additional excavation in order to execute his contract and for which he could receive no compensation is obviously unjust. It at least finds no rational explanation in this record. It must also be kept in mind that Capt. Demeritt, in making the aforesaid declarations, did so with full knowledge of the fact that he personally *381 made the observations and measurements, and did so from a datum plane fixed at the mean of the lower low tide, so that even changing the datum plane in strict accord with the alleged trade usage we have irrevocably fixed an excess excavation of at least 10,600 cubic yards of rock. It has never been disputed; it absolutely could not be done, for the completion maps on file as a part of the record unmistakably show that excavations “ varying from 31.6 to 37.5 feet, and in no single instance does a reading show a depth as small as 30 feet, and very few at 32,” were required of the contractor and payments unduly withheld from him until this work was done. Thus it seems apparent to the court that in a case involving, as this does, a chain of estimates always more or less uncertain that, if any injustice has been done, it was the contractor who suffered and not the Government, for the court has been indeed solicitous to keep its judgment well within the limits of reasonable percentage, as shown by the record in the case.
Taking up, then, the allegations of the affidavits themselves, we find a statement that the court, as stated above, erroneously found the catamaran was in fact the determining device in ascertaining depths of excavation, and that not to exceed 65 cubic yards of rock were required to be excavated because of the use of this machine. It would be idle to cite authorities to sustain the legal proposition that courts will not grant new trials unless convinced that the newly discovered evidence offered" would change the result. We think we have sufficiently answered this contention, even granting the complaint. It is true the court found that by reason of the use of this device claimant was compelled to do 3,853 cubic yards of extra excavation. Taking, however, the affiant’s own statement, it would result in no different conclusion, for the division of the total excess between the two serious complaints, of means of measurement and datum plane from which same was made, simply totals the conceded excess as stated by the engineer himself, which upon a new trial must be found to have been 10,600 cubic yards below the lower low tide, the datum plane from which the record shows he made his calculations, resulting only in placing the *382 figures in a different column or finding the excess due to a different cause.
Another affidavit more important, and to which the court gave careful consideration, alleges that the lithographic maps attached to the contract are exact duplicates of a larger map prepared and exhibited to the contractor in the office of the local engineer, the original map exhibiting in plain and distinct print a legend showing the datum plane from which measurements were to be made was the lower low tide. It is conceded that the legend printed on the lithographic map, attached to and made a part of the contract, shows the datum plane as of the mean of the low tide. The defendants supplement this contention by additional allegations that in the performance of this particular sort of work a general trade usage prevails by which, despite positive terms to the contrary, means that low tide is understood in this trade to mean the mean of the lower low tide. “The truest test of a commercial usage is its having existed a sufficient length of time to have become generally known and to warrant a presumption that contracts are made in reference to it.” Taking the above quotation, which is exceedingly apt, it will be at once- seen that the question itself involves a new disputation, a new issue upon which a new record must be made, especially so in view of the fact that the contract itself expressly fixed the datum plane. While it ought not to be difficult to establish a trade usage (in fact, it must not be i-f one is to be established), yet in view of the record in this case and the unusual character of the contract work, which has not yet progressed to such an extent as to be at all general, it is more than apparent that this issue itself affords a vehicle for prolonged and tedious delay.
It is very doubtful at best if the evidence proffered would be at all admissible, for, as before observed, the contract itself expressly fixed the datum plane, and in the absence of very strong and convincing proof to the contrary the court will not disturb the express language of the written agreement, so plain and intelligible as this. Indeed, if it was a trade usage of such general knowledge as now pur *383 ported, it is inexplicable how it so entirely escaped the attention of all concerned until this late day. This cause received the attention of able and conscientious counsel on both sides; no point worthy of attention escaped them; it was fully and fairly presented in repeated oral arguments; the record was the subject of careful and repeated conferences ; the judgment of the court was always unanimous; and we see nothing presented in the present motion which entitles the defendants to have the case go again to the general docket and reopen the record to another dispute involving the taking of testimony on the Pacific coast, which in our judgment would not in any event change the present result. The judgment entered was exceedingly conservative in view of the entire record, and we believe justice has been done.
The motion for a new trial is overruled.